FILED by Macomb County Circuit Court
3/9/2021
Approved, SCAO

2021-000902-CD
RANCK, MICHAEL

| | Original - Court | 2nd copy - Plaintiff |
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | SUMMONS | CASE NO. |
| 16th | JUDICIAL DISTRICT | | 2021-000902- -CD |
| | JUDICIAL CIRCUIT | | |
| | COUNTY PROBATE | | |

Court address                                                                 Court telephone no.

Plaintiff's name(s), address(es), and telephone no(s).

Michael Ranck
5811 Pine Breeze Drive
Clarkston, MI 48346

v

Defendant's name(s), address(es), and telephone no(s).

Flex-N-Gate Corporation
502 E. Anthony Drive
Urbana, Illinois 61802
(217) 337-0613

JENNIFER FAUNCE

Plaintiff's attorney, bar no., address, and telephone no.

Thomas R. Warnicke (P47148)
Law Office of Thomas R. Warnicke, PLLC
535 Griswold Street, Suite 2632
Detroit, MI 48226
(248) 930-4411

Flex-N-Gate Michigan, LLC
Flex-N-Gate Advanced Product Development, LLC
5663 E. Nine Mile Road
Warren, MI 48091
(586) 759-8900

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.          **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date | Court clerk |
| MAR 09 2021 | JUN 09 2021 | ANTHONY G. FORLINI |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) SUMMONS                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**EXHIBIT A**

| PROOF OF SERVICE | SUMMONS |
|---|---|
| | Case No. |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

# EXHIBIT A



# Anthony G. Forlini
Macomb County
Clerk & Register of Deeds

**Kathy Smith**
Chief Deputy Clerk

---

TO:    Court Customer

FROM:    Macomb County Clerk / Register of Deeds

CIRCUIT COURT CASE NO: 2021-902-CD

CASE CAPTION:

---

This is to inform you that the above mentioned case is deemed an eFiling case Pursuant to Administrative Order No. 2010-06.

It is MANDATORY that all further filings in this matter are to be filed electronically through the court's eFiling website at:

    https://mifile.courts.michigan.gov

Registration instructions, filing instructions, the administrative order and frequently asked questions can be found on the court's website at:

    http://circuitcourt.macombgov.org/CircuitCourt-eFilingResources

All parties must register with the court and opposing parties one email address for service. Service will be provided electronically to this email address. All parties must also register this email address with the TruFiling e-filing system. Each individual bears the responsibility for the accuracy of the registered email address.

For Truefiling technical support. Please call 1-855-959-8868 or send an email to support@truefiling.com.

It is required that you serve this notification to all parties when perfecting service on the complaint. Also if you have not previously provided your email address to our office when submitting documents for filing, it is now required that you furnish it in order for us to update our records accordingly.

---

If you need help in submitting your filing electronically, assistance is available in the Circuit Court I.T. Department on the 6th Floor. Computers, scanners and staff are available to assist you during normal business hours 8 a.m - 4:30 p.m.

---

**Clerk's Office**
40 North Main Street, 1st Floor
Mount Clemens, MI 48043
586-469-5351; Fax: 877-443-9505
clerksoffice@macombgov.org
macombgov.org/ClerkRoD

**Macomb County Jury Services**
40 North Main Street,1st Floor
Mount Clemens, MI 48043
586-469-5158; Fax: 866-731-8701
juryroom@macombgov.org
macombgov.org/ClerkRoD

**Register of Deeds**
120 North Main Street
Mount Clemens, MI 48043
586-469-7953; Fax: 586-469-5130
registerofdeeds@macombgov.org
macombgov.org/ClerkRoD

**EXHIBIT A**

FILED by Macomb County Circuit Court
3/9/2021

2021-000902-CD
RANCK, MICHAEL

### STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

MICHAEL RANCK,

    Plaintiff,

v.

    Case No. 2021-000902 -CD

    Hon. JENNIFER FAUNCE

FLEX-N-GATE CORPORATION, an Illinois corporation,
FLEX-N-GATE MICHIGAN, LLC, a Michigan limited liability company, and
FLEX-N-GATE ADVANCED PRODUCT, a Michigan corporation.

    Defendants.

---

THOMAS R. WARNICKE (P47148)
Attorney for Plaintiff
Law Office of Thomas R. Warnicke, PLLC
535 Griswold Street, Ste. 2632
Detroit, MI 48226
(248) 930-4411
tom@warnickelaw.com

**RECEIVED**

MAR 09 2021

ANTHONY G. FORLINI
Macomb County Clerk

---

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

/s/ Thomas R. Warnicke (P47148)
Attorney for Plaintiff

## EXHIBIT A

Plaintiff, Michael Ranck, by and through his attorney, Law Office of Thomas R. Warnicke, PLLC, for his Complaint against Defendants, states as follows:

### Jurisdiction and Venue

1.  Plaintiff, Michael Ranck, brings this civil action against Defendants for violation of the Michigan Elliott Larsen Civil Rights Act ("ELCRA") – MCL 37.2101 *et. seq.*, for age discrimination, retaliation and failure to hire.

2.  Plaintiff is and has been at all times relevant hereto, a resident of the County of Oakland, and a citizen of the State of Michigan.

3.  Flex-N-Gate Corporation is an Illinois corporation.

4.  Flex-N-Gate Corporation's resident agent designated to be served with legal service of process is located at 502 E. Anthony Drive in Urbana, Illinois.

5.  Flex-N-Gate Michigan, LLC is a Michigan limited liability company.

6.  Flex-N-Gate Michigan, LLC's resident agent designated to be served with legal service of process is located at 5663 E. Nine Mile Rd. in Warren, Michigan.

7.  Flex-N-Gate Advanced Product Development, LLC is a Delaware corporation.

8.  Flex-N-Gate Advanced Product Development's resident agent designated to be served with legal service of process is located at 5663 East Nine Mile Rd. in Warren, Michigan.

9.  Hereinafter, Defendants Flex-N-Gate Corporation, Flex-N-Gate Michigan, LLC and Flex-N-Gate Advanced Product Development, LLC are referred to collectively as "Flex-N-Gate".

10. Flex-N-Gate's principal place of business and corporate headquarters is located at 1306 East University Avenue in Urbana, Illinois.

2

**EXHIBIT A**

11.    Flex-N-Gate produces products and systems for the automotive industry.

12.    These products and services include, but are not limited to, product engineering, program management, design services, testing, stamping, welding, molding, painting, plating, assembly and shipping.

13.    Flex-N-Gate is a global organization and has over 24,000 employees worldwide.

14.    Defendant Flex-N-Gate is duly authorized to conduct business in the state of Michigan.

15.    Plaintiff worked at Flex-N-Gate's Warren, Michigan location, 5663 East 9 Mile Road.

16.    This action is brought pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2101 et seq. ("ELCRA"), which prohibits employment discrimination and retaliation on the basis of age.

17.    Venue and jurisdiction are proper in this Court because of original circuit court jurisdiction of claims brought under the Michigan Elliott-Larsen Civil Rights Act, the operative facts giving rise to the claims set forth in this Complaint took place within Macomb County, Defendants reside in and/or do business within Macomb County, and this dispute, exclusive of interest, costs, and fees, is in excess of $25,000.

### General Allegations and Statement of Claims

*Plaintiff's Background and Exemplary Performance with Flex-N-Gate*

18.    Plaintiff re-alleges and incorporates the paragraphs as set forth above.

19.    In 2007, Plaintiff was offered a position with Flex-N-Gate as a Program Manager for FCA's Dodge Caravan and Chrysler Town and Country vehicles.

20.    Plaintiff is and was qualified for the position of Program Manager with Flex-N-Gate.

21.    Plaintiff was qualified for the position for many reasons, including but not limited to Plaintiff having worked in the automotive industry for over 35 years on various vehicle

3

**EXHIBIT A**

lines/models and has been providing Program Management for Tier 1 Suppliers (like Flex-N-Gate) since 1996.

22. Plaintiff led many very important and very profitable programs for Flex-N-Gate during his employment with Flex-N-Gate.

23. Plaintiff always performed in an exemplary manner during his tenure with Flex-N-Gate.

24. Indeed, Plaintiff did not have any write-ups and was never subjected to any disciplinary actions whatsoever.

25. Plaintiff was never put on a Performance Improvement Plan, Performance Action Plan, or any other similar type of Plan during his employment with Flex-N-Gate.

26. Indeed, not a single work performance deficiency was ever documented in Plaintiff's 13+ year tenure with Flex-N-Gate.

27. To the contrary, Plaintiff received excellent performance reviews and evaluations *every year*.

28. In his last performance review before his termination, Flex-N-Gate rated Plaintiff as a "Strong Performer," a genuine copy which is attached hereto as <u>Exhibit A</u>.

29. A rating of Strong Performer is the second highest rating a Flex-N-Gate employee could receive.

30. On that same review attached hereto as <u>Exhibit A</u>, Plaintiff's manager noted, "[Plaintiff] is thorough in all that he does. He takes the proper amount of time to see that each task is completed and does not rush through his assignments. He has a very practical and methodical approach which ensures that the end product of whatever he is working on is concise and done accurately."

**EXHIBIT A**

31.  Plaintiff's manager further noted in the review that, "[Plaintiff] continues to support carryover RT and RU which consistently have numerous CNs, most of which are electrical changes which continue to be complicated [and] that require program management support. He is able to accomplish this while keeping his 2020.5 and 2021 RU programs on track."

32.  "RU" and "RT" refers to FCA's minivans – the program that Plaintiff was assigned to.

33.  An Account Manager at Flex-N-Gate noted that Plaintiff was the best Program Manager Flex-N-Gate had on the RU program.

34.  In fact, Plaintiff's performance was so strong during his employment with Flex-N-Gate that he received an increase in his rate of pay every year.

35.  Even more telling, Plaintiff received a bonus every year that he was with Flex-N-Gate.

36.  Bonuses issued by Flex-N-Gate are discretionary and awarded only in instances of exceptional performance and solid company performance.

37.  All of the bonuses Plaintiff received from Flex-N-Gate were discretionary.

38.  One of the Unit Responsibles at FCA, which was one of Flex-N-Gate's most significant clients, said to Plaintiff (after Plaintiff's termination) that, "he (FCA) would hire [Plaintiff] in an instant given the opportunity."

39.  That same individual also stated, "We [FCA and Plaintiff] have had a great relationship over the years and I have appreciated your contributions to our programs."

40.  Thus, it is clear that Plaintiff diligently performed his duties and served Flex-N-Gate's clients, particularly FCA, in an exemplary manner.

41.  Plaintiff worked for, and dutifully performed his duties with Flex-N-Gate, for over 13 years.

**EXHIBIT A**

42. Plaintiff's employment with Flex-N-Gate over his 13 years was continuous (i.e. that Plaintiff did not have any gaps in his employment in which he was not an employee of Flex-N-Gate).

*Plaintiff's Shocking and Abrupt Wrongful Termination*

43. On May 29, 2020, Plaintiff received a call from Staci Krugh, Flex-N-Gate Human Resources Manager, informing Plaintiff that he was being terminated.

44. Prior to being informed of his termination on May 29, 2020, Plaintiff had not received any prior warning or notice that his was job was in jeopardy or that Flex-N-Gate was considering the termination of his employment.

45. At the time of his termination on May 29, 2020, Plaintiff was 63 years old.

46. At no time before the moment Plaintiff was informed that he was being terminated from his employment with Flex-N-Gate did Plaintiff ever receive from Defendants any written communication or warning that his job was ever jeopardy or that he was ever at risk for termination.

47. Plaintiff was shocked when he was informed that he was being terminated.

48. Plaintiff's manager at Flex-N-Gate was also shocked that Plaintiff was terminated from his employment with Flex-N-Gate.

49. Plaintiff's manager had not been informed prior to Plaintiff being terminated that Flex-N-Gate intended to terminate Plaintiff.

50. Plaintiff later also received notice that Flex-N-Gate terminated his health insurance effective as of the *same day* he was terminated.

6

**EXHIBIT A**

51. This was particularly cruel, as Flex-N-Gate knew that Plaintiff's wife had been recently diagnosed with Alzheimer's disease and that the family relied on Flex-N-Gate's medical benefits.

52. Flex-N-Gate cited "lack of work" as the reason for Plaintiff's termination.

53. However, Flex-N-Gate's purported reason of "lack of work" for terminating Plaintiff was merely a pretext for Flex-N-Gate's real reason, which was age discrimination, especially as Plaintiff had the same workload for several years before his termination.

54. Indeed, there was no decrease in Plaintiff's workload even after the COVID-19 pandemic hit.

55. The real reason that Plaintiff was fired was because of his age.

56. Plaintiff was replaced by a younger Program Manager.

57. Upon information and belief, the individual who replaced Plaintiff is over twenty (20) years younger than Plaintiff.

58. It is undeniable that Plaintiff had no pre-termination performance issues and that he was terminated because of his age and because Flex-N-Gate wanted a younger individual to be in Plaintiff's position.

59. On the day of his termination, Plaintiff was told that he would have the opportunity to meet with the HR manager (Ms. Krugh) a few days later, on June 1, 2020.

60. On June 1st, Plaintiff arrived for his meeting to find that his personal belongings were left for him in a box at the security desk, along with a proposed Separation and Release of Claims Agreement, a genuine copy of which is attached hereto as Exhibit B.

61. The HR manager was nowhere to be found on June 1, 2020 and did not show up for their meeting that was scheduled to take place on that date.

7

**EXHIBIT A**

62.   Flex-N-Gate's HR Manager's failure to appear at the scheduled meeting was not only unprofessional on the part of Flex-N-Gate and a clear insult to Plaintiff, it also evidenced Defendants' animus toward Plaintiff.

63.   On June 3, 2020, Plaintiff contacted Flex-N-Gate's HR Manager to request his personnel file and performance reviews.

64.   The HR Manager stated she would check with the company as to whether Flex-N-Gate would authorize a release of Plaintiff's personnel file and reviews.

65.   A response to Plaintiff's request was never received by Plaintiff, nor did he receive his personnel file or performance reviews.

*Plaintiff was Retaliated Against on Account of his Age and Complaints He Made After Being Terminated by Flex-N-Gate and Flex-N-Gate is Liable for Their Subsequent Failure to Hire Plaintiff*

66.   Plaintiff was offered a meager proposed severance agreement in exchange for signing away his legal rights to pursue Flex-N-Gate for wrongful termination.

67.   Flex-N-Gate's proposed severance agreement further contained a clause that specifically precluding Plaintiff from bringing suit against Flex-N-Gate for age discrimination and served as a release of employment related claims.

68.   The separation and release agreement recommended that Plaintiff select a counsel of his choice, and at his cost, to review the terms of the severance agreement and to make an informed decision about whether to sign.

69.   Plaintiff did so select counsel of his choosing per Defendants' recommendation to review the agreement and make an informed decision about whether to sign.

70.   Shortly after his termination, and prior to Plaintiff making any decision or taking any action as to the separation agreement, Plaintiff was contacted by his supervisor at Flex-

8

**EXHIBIT A**

N-Gate who had identified an opportunity that he believed would be a good fit for Plaintiff with Defendants.

71.    The position was Program Manager for FCA's Jeep Grand Wagoneer ("WS") vehicle.

72.    Tom Spagnuolo (Account Manager), Mike Marlow (Engineering Supervisor), Dan Kennedy (Director of Sales) and Dave Lepp (Director of Engineering), all of whom had high-ranking positions within Flex-N-Gate, recommended and/or were favorable for Plaintiff getting the open position.

73.    A few days later, on or about June 19, 2020, and shortly before the proposed separation agreement was set to expire, Plaintiff was contacted by Ms. Cavanaugh of Flex-N-Gate's HR Department to inquire as to whether he intended to sign the separation agreement.

74.    Plaintiff stated that he did not plan to sign the separation agreement based on legal advice given to him by his attorney, particularly that he had viable claims for age discrimination.

75.    Plaintiff also told the Ms. Cavanaugh that he believed he was terminated and discriminated against because of his age.

76.    However, Plaintiff also told Ms. Cavanaugh that a separation agreement might not be needed because he was being recommended by several Flex-N-Gate management employees for an open position within the company.

77.    Ms. Cavanaugh then proceeded to ask Plaintiff the name of the attorney he had spoken to and the attorney's phone number.

78.    Plaintiff provided the name of the attorney he had spoken to and the attorney's phone number.

**EXHIBIT A**

79.   Ms. Cavanaugh also asked Plaintiff who approached him from Flex-N-Gate about the
      open position and who Plaintiff discussed it with.

80.   Plaintiff provided Ms. Cavanaugh with the name Nathan Bosse (General Manager).

81.   Plaintiff continued to receive positive feedback on being hired into the position by Tom
      Spagnuolo and Mike Marlow.

82.   Just a few days later, on or around June 21, 2020, Plaintiff contacted Nathan Bosse
      regarding when Plaintiff would be able to start the position.

83.   Nathan Bosse told Plaintiff that he was instructed by Flex-N-Gate management and HR
      to "stand down" and that Flex-N-Gate would not permit Plaintiff to be hired into the
      position.

84.   The "stand down" order was nothing short of retaliation, especially since so many
      management employees at Flex-N-Gate wanted Plaintiff in the position.

85.   The "stand down" order was clearly given because of and in retaliation for Plaintiff
      complaining of age discrimination and because Plaintiff obtained counsel to review his
      potential legal claims.

86.   Indeed, the "order" was given by Flex-N-Gate *shortly after* Plaintiff told HR that he
      believed he was terminated because of age discrimination and that he had obtained
      legal counsel.

## COUNT 1

## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

## MCL 37.2101 ET SEQ.

### (Age Discrimination)

87.   Plaintiff repeats and re-alleges the allegations as set forth above.

**EXHIBIT A**

88. At all times during his employment with Flex-N-Gate, Plaintiff was qualified for the positions he held, including his position at the time of his termination.

89. At all material times, Plaintiff was an employee and Flex-N-Gate was his employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* (the "Act").

90. The Act prohibits an employer from discriminating against, discharging or retaliating against an employee on the basis of age or making complaints related thereto.

91. As set forth above, Plaintiff suffered unlawful discrimination and termination by Flex-N-Gate on the basis of his age.

92. Flex-N-Gate's actions were made in an intentional, willful and malicious disregard for Plaintiff's rights.

93. As a result of Plaintiff's discharge, he has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, company car, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight loss and/or gain, aggravation, frustration, loss of the ordinary pleasures of everyday life, inability  socialize and enjoy his community, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows: (a) Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical,

11

**EXHIBIT A**

and mental and emotional distress set forth above; (b) Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled; (c) Economic damages, including for wages and pension benefits, past and future, for loss of 401(k), loss of company car and medical and other benefits, and any other fringe benefits that Plaintiff lost as a result of his wrongful termination, in whatever amount Plaintiff is found to be entitled; (d) An award of interest, costs, and reasonable attorney fees; (e) An injunction prohibiting any further acts of retaliation or discrimination; and (f) Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

## COUNT 2

## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

## MCL 37.2101 ET SEQ.

### (Retaliation – Failure to Hire)

94.  Plaintiff engaged in a protected activity by complaining of age discrimination as the basis for his termination, as well as for retaining an attorney to review his claims for the conduct he was subjected to by Flex-N-Gate – age discrimination.

95.  Defendants knew that Plaintiff had retained an attorney.

96.  Defendants took an adverse employment action against Plaintiff by failing to hire him into the position that so many management employees wanted him to be placed into after his termination.

97.  There was a causal connection between the protected activity (complaining of age discrimination and retaining an attorney to review and pursue such claims) and the adverse employment action taken by Defendants in failing to re-hire Plaintiff.

12

**EXHIBIT A**

98.   As a result of Plaintiff's discharge, he has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight loss and/or gain, loss of the ordinary pleasures of everyday life, inability socialize and enjoy his community, including the right to a gainful occupation of choice. Plaintiff if also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows: (a) Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical, and mental and emotional distress set forth above; (b) Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled; (c) Economic damages, including for wages and pension benefits, past and future, for loss of 401(k), loss of company car and medical and other benefits, and any other fringe benefits that Plaintiff lost as a result of his wrongful termination, in whatever amount Plaintiff is found to be entitled; (d) An award of interest, costs, and reasonable attorney fees; (e) An injunction prohibiting any further acts of retaliation or discrimination; and (f) Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

**EXHIBIT A**

Respectfully submitted,

*/s/ Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorney for Plaintiff
Law Office of Thomas R. Warnicke, PLLC
535 Griswold Street, Suite 2632
Detroit, MI 48226
(248) 930-4411
tom@warnickelaw.com

14

**EXHIBIT A**

## JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,

*/s/ Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorney for Plaintiff
Law Office of Thomas R. Warnicke, PLLC
535 Griswold Street, Suite 2632
Detroit, MI 48226
(248) 930-4411
tom@warnickelaw.com

15

**EXHIBIT A**

# EXHIBIT A

**EXHIBIT A**



| Title | Description |
|---|---|
| Unacceptable | Employee's job performance does not meet requirements of position. |
| Opportunity for Improvement | Has the potential to meet expectations and standards, but substantial supervisory involvement is required to ensure this happens; demonstrates improvement in job knowledge and skills, but further development in these areas is needed to meet expectations for this position. |
| Solid Performer | Demonstrates the knowledge, skills and abilities that result in the effective performance of the position requirements. |
| Strong Performer | Overall performance consistently meets or exceeds expectations. Demonstrates significant achievement. Shows initiative, high quantity of work. Achieves results in an effective manner. |
| Exemplary | Overall performance is at an exceptional level of accomplishments; individual possesses superior job skills and knowledge, and effectively applies them to work assignments to further enhance the overall performance. |

**1. Quality of Work -** Evaluate the thoroughness, accuracy, neatness, and acceptability of the work completed by the employee. Determine ability to work under pressure and learn from previous mistakes. Review accuracy of checking processes and tasks and handling issues in a timely manner.



| Reviewer | Rating |
|---|---|
| Michael Marlow (Manager) | Strong Performer |

**Comment**

Michael Marlow (Manager):

Mike is very thorough in all that he does. He takes the proper amount of time to see that each task is completed and does not rush through his assignments. He has a very practical and methodical approach which ensures that the end product of whatever he is working on is concise and done accurately.

**2. Quantity of Work -** Produces appropriate quantity of work and prioritizes project urgency in a meaningful and practical way. Eliminates obstacles when they arise, uses available resources effectively and efficiently. Manages multiple work assignments and delegates appropriately when/where necessary.



| Reviewer | Rating |
|---|---|
| Michael Marlow (Manager) | Solid Performer |

**Comments**

Michael Marlow (Manager):

Mike continues to support carryover RT and RU which consistently have numerous CN's, most of which are electrical changes which continue to be complicated that require program management support. He is able to accomplish this while keeping his 2020.5 and 2021 RU MCA programs on track.

**EXHIBIT A**

# EXHIBIT B

EXHIBIT A



May 29, 2020

Michael Ranck
5811 Pine Breeze Drive
Clarkston, MI 48346

Re: SEPARATION AND RELEASE OF CLAIMS AGREEMENT

This Separation and Release of Claims Agreement (the "Agreement") is entered into by and between Flex N Gate Advanced Product Development, LLC. a limited liability company (the "Employer") on behalf of itself, its subsidiaries and other corporate affiliates and each of their respective employees, officers, directors, owners, shareholders and agents (collectively referred to herein as the "Employer Group") and you, Michael Ranck ( the "Employee"). This Agreement will become effective on the eighth (8th) day after you sign this Agreement, so long as it has been signed and not revoked by you before that date (the "Effective Date"). No payments due to you under this Agreement shall be made or begin before the Effective Date.

In consideration of the covenants set forth below, the parties agree as follows:

1.      Separation of Employment

        (a)     Separation Date. Your employment with the Employer is terminated effective May 29, 2020.

        (b)     Payment of Final Wages and Receipt of all Benefits. You have received and reviewed your final paycheck and your promise and agree that as of the Separation Date, the Employer has paid you (1) all salary, wages, bonuses, premiums, leave, housing allowances, relocation costs, commissions, interest, fees, variable compensation and any and all other benefits and compensation owed to you through the Separation Date (subject to applicable taxes and other withholdings), (2) all accrued but unused vacation and floating days at your final rate of pay (subject to applicable taxes and other withholdings), and (3) all reimbursable business expenses incurred by you that have been submitted and approved by the Employer prior to the Separation Date. The Employer will reimburse any remaining reimbursable business expenses upon timely submission by you in accordance with the Employer's expense reimbursement policies. No other amounts or benefits are due to you from the Employer through the Separation Date. You further acknowledge and represent that you have received any leave to which you are entitled or which you have requested, if any, under all applicable state and federal leave laws, including with limitation the *Family Medical Leave Act,* and applicable Employer policies

        (c)     Separation Benefits. As consideration for your execution of and compliance with this Agreement, including your waiver and release of claims in below and other obligations stated in this Agreement, and provided this Agreement is not revoked as provided below, employer agrees to provide the following severance benefits to which you are not otherwise entitled:

        (i)     Lump Sum Benefits. Employer will pay you a one-time lump sum payment of $32,776.00, less applicable taxes and other withholdings, which shall be payable with the Employer's first regular pay cycle following the Effective Date, in accordance with the employer's payroll schedule, subject to you remaining compliant with the terms of this Agreement.

**EXHIBIT A**

- 2 -



(ii)     COBRA Continuation. Unless otherwise excepted in this Agreement, all Employer benefits cease at the Separation Date. You understand that you may elect to continue your existing healthcare coverage for up to 18 months following the Separation Date in accordance with procedures provided by Employer by continuing to pay premiums to the Employer under the Employer-sponsored group health benefit plans for you and your existing dependents, pursuant to the *Consolidated Omnibus Budget Reconciliation Act of 1985*, as amended ("COBRA").

(iii)     No Employer Contest of UI Benefits. Employer will not to contest your application for any unemployment benefits. When so required, the Employer will answer any inquiries by the Department of Labor concerning the termination of your employment in a truthful manner.

Except as specifically provided herein, you are not entitled to any additional payment or consideration. Nothing in this Agreement shall be deemed or construed as an express or implied policy or practice of the Employer to provide these or other benefits to any individuals other than you.

2.     Waiver and Release.

(a)     General. In exchange for the consideration provided in this Agreement, which you acknowledge is adequate and satisfactory consideration, except for the claims identified below as expressly excluded from this waiver and release, you, on behalf of yourself and your heirs, executors, administrators, agents and assigns (collectively, the "Releasors"), hereby irrevocably and unconditionally fully and forever waive, release and discharge the Employer and the Employer Group and their respective past and present officers, directors, shareholders, affiliates, predecessors, successors, assigns, agents, investors, employees, administrators, benefit plans, plan administrators, insurers, divisions, subsidiaries, and representatives (collectively, the "Releasees") from all claims, demands, actions, causes of actions, judgments, rights, duties, obligations, damages, debts, liabilities, fees and expenses (inclusive of attorneys' fees) relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that you may possess against any of the Releasees arising from any actual or alleged act, omission, fact, transaction, practice, conduct, occurrence or other matter that have occurred up to and including the date you have signed this Agreement including, but not limited to any claim relating to or arising out of:

(i)     your employment relationship with the Employer and the termination of that relationship, including but not limited to any claims for wages, salary, bonus, compensation, commissions, incentive compensation, deferred compensation, severance or other cash payments;

(ii)     wrongful discharge of employment; discrimination; harassment; retaliation; failure to provide reasonable accommodation; failure to engage in a good faith interactive process; breach of contract, both express and implied; breach of a covenant of good faith and fair dealing, both express and implied; promissory estoppel; negligent or intentional infliction of emotional distress; fraud; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; unfair business practices; negligence; defamation; libel; slander; personal injury; assault; battery; invasion of privacy; false imprisonment; conversion; disability benefits, or any claims arising out of any other agreement, incident or relationship between the parties prior to the execution of this Agreement

(iii)     the common law, including, but not limited to, claims of personal injury, invasion of privacy, denial or separation of employment in contravention of the common law or any federal, state, local or public policy, law or regulation.

**EXHIBIT A**

- 3 -



      (iv)     any contract, express or implied;

      (v)     any violation of any federal, state or local law (statutory, regulatory or otherwise) that may be legally waived and released, including, but not limited to, Title VII of the Civil Rights Act of 1964 (Title VII); the Americans with Disabilities Act; the Family and Medical Leave Act, except as prohibited by law; the Equal Pay Act; the Fair Labor Standards Act, except as prohibited by law; the Employee Retirement Income Security Act (regarding unvested benefits); the Fair Credit Reporting Act; the Civil Rights Act of 1991; Section 1981 of U.S.C. Title 42; the Immigration Reform and Control Act, the Worker Adjustment and Retraining Notification Act; the Uniform Services Employment and Reemployment Rights Act; any claim under the regulations of the Office of Federal Contract Compliance Programs (41 Code of Federal Regulations § 60 *et seq* .), the Illinois Biometric Information Protection Act; the Illinois Human Rights Act; the Right to Privacy in the Workplace Act; the Illinois Occupational Safety and Health Act; the Illinois Worker Adjustment and Retraining Notification Act; the Illinois Whistleblower Act; the Illinois Wage Payment and Collection Act; the Illinois Equal Pay Act, the Rehabilitation Act of 1973, the Michigan Workers' Disability Compensation Act; the Elliot-Larson Civil Rights Act; the Michigan Handicapper's Civil Rights Act; the Michigan Whistleblower's Protection Act; the Michigan Paid Medical Leave Act; the Michigan Occupational Health and Safety Act; Michigan wage and hour laws, the National Labor Relations Act; the Genetic Information Nondiscrimination Act of 2008; the Ohio Civil Rights Act; the Ohio Civil Rights Act; the Ohio Equal Pay Statute; the Ohio Wage Payment Anti-retaliation Statute; the Ohio Whistleblower's Protection Act; the Ohio Workers' Compensation Anti-retaliation Statute; the Indiana Civil Rights Law; the Indiana Employment Discrimination Against Disabled Persons Act; the Indiana Age Discrimination Act; the Indiana Occupational Health and Safety Act and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) in each case including any amendments and their respective implementing regulations that may be legally waived and released.

      (vi)     claims against the Employer based upon the U.S. Constitution or any applicable state constitution;

      (vii)     claims against the employer based upon any theory of alleged equitable entitlement to relief; and

      (viii)     claims:

- for wages or benefits not otherwise provided for in this Agreement;
- for wrongful discharge for refusal to commit an act prohibited by law or public policy;
- for intolerable working conditions or for any other reason; and
- that may lawfully be released

      (b)     Excluded Claims. The only claims that are not being waived and released by you under this Agreement are those you may have for:

- Unemployment benefit rights, state disability, workers' compensation and/or paid family leave insurance benefits pursuant to the terms of applicable state law;
- Continuation of any existing participation in Employer-sponsored group health benefit plans, at your sole expense, under the federal law known

**EXHIBIT A**

- 4 -



as "COBRA" and/or under an applicable state counterpart law, which you are eligible to elect to continue whether or not this Agreement becomes effective;

- any right to file an administrative charge or complaint with the Equal Employment Opportunity Commission or other administrative agency, although you waive any right to monetary relief related to such a charge or administrative complaint;

- Violation of any federal, state or local statutory law and/or public policy right or entitlement that, by applicable law, is not waivable; and

- Employer's actions after the Separation Date or with respect to Employer's obligations under this Agreement.

(c)     Covenant Not to Sue. You agree not to sue or join in any suit against Employer Group for any claim relating to or arising out of your employment or your separation from employment with Employer provided, however, that nothing will preclude you from (a) bringing a lawsuit or proceeding against Employer to enforce Employer's obligations under this Agreement or to challenge the enforceability of the release under the *Older Worker Benefit Protection Act*, (b) filing a complaint with, providing information to or testifying or otherwise assisting in any investigation or proceeding brought by any state, federal or local regulatory or law enforcement agency or legislative body or (c) filing any claims that are not permitted to be waived or released under applicable law. However, you waive your right to receive any relief (legal or equitable) based on any charge, complaint or lawsuit against Employer Group filed by you or anyone else on your behalf.

(d)     Release of Claims Related to Age.

(i)     The ADEA. The *Age Discrimination in Employment Act of 1967* ("ADEA") is a federal statute prohibiting discrimination on the basis of age in connection with employment, benefits and benefit plans. Your signature on this Agreement is your acknowledgement that you understand you are waiving, releasing and forever giving up any claims under the ADEA as well as all other claims that you may have against the Released Parties at the time you sign this Agreement.

(ii)     Opportunity to Consider Agreement and Consult Counsel. You are advised to consult with an attorney prior to signing this Agreement. By signing this agreement you hereby acknowledge, understand and affirm that

- This Agreement is a binding legal document;

- You may sign this Agreement without waiting the full 21 days and that, if you have done so, your decision to do so has been knowing and voluntary, and not induced through fraud, misrepresentation, a threat to withdraw or alter the offer prior to the expiration of the 45 -day period, or the provision of different terms to employees who sign any release prior to expiration of the 21 day period

- You are voluntarily signing and entering into this Agreement without reservation after having given the matter full and careful consideration;

- You have considered the advice of your advisors in reaching the decision to execute this Agreement;

- You have been advised to consult with an attorney before signing this Agreement;

**EXHIBIT A**

-5-



- You have been provided twenty-one (21) days during which you may consider whether to sign this Agreement. If you elect to sign this Agreement before the end of the twenty-one (21) day review period, you do so knowingly, willingly and on the advice of counsel, with full understanding that you are waiving a statutory right to consider this Agreement for the entire twenty-one (21) days;
- Any changes to this Agreement, whether material or immaterial, do not restart the running of the 21-day consideration period;
- You Acknowledge that your employment with the Employer terminated as of the Separation Date, regardless of whether you elects your revocation rights in this Section
- You warrant that after careful review and study of this Agreement, you understand that the terms set forth herein are those actually agreed upon.

(iii)    Revocation Period. You acknowledge and understand that you have seven (7) days from your execution and delivery of this Agreement to Employer (which shall not occur prior to the Separation Date) in which to revoke or rescind this Agreement by delivering a signed and dated notice of revocation to the Employer. After the expiration of such seven (7) day period, this Agreement will become effective and enforceable.

(e)    You represent that you have no lawsuits, claims, or actions pending in your name, or on behalf of any other person or entity, against the Employer or any of the other Releasees. You also represent that you do not intend to bring any claims on your own behalf or on behalf of any other person or entity against the Employer or any of the other Releasees.

3.    Consultation with Legal Counsel. You acknowledge that the Employer has advised you in writing to consult with counsel and has granted you at least 21 days to consider this Agreement, including the Waiver and Release in Paragraph 2 above, before signing it. You also understand that if you do sign this Agreement earlier than such period, you must sign and return the attached Voluntary Waiver of Review and Consideration Period in the form set forth in Exhibit A.

4.    Confidential and Proprietary Information.

(a)    You agree that you shall never disclose to any person, corporation, or partnership, or other entity or use, directly or indirectly, for your benefit or the benefit of another, any of the Employer Group's Confidential and Proprietary Information except under compulsion of legal process.

(b)    For purposes of this Paragraph "Confidential and Proprietary Information" means information relating to the past, present or planned business of the Employer Group which has not been released publicly by authorized representatives of the Employer. This information may include but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting

**EXHIBIT A**

- 6 -



information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, and manufacturing information, of the Employer Group or its businesses, or of any other person or entity that has entrusted information to the Employer in confidence. You understand and agrees that Confidential and Proprietary Information developed by you in the course of your employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to you in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of you or person(s) acting your behalf.

      (c)     You will immediately return to the employer all written or recorded material obtained through your employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential and Proprietary Information.

      (d)     You will not actively solicit any employee or independent contractor of the Employer Group on behalf of any other business enterprise, nor shall you induce any employee or independent contractor associated with the Employer Group to terminate or breach an employment, contractual or other relationship with the Employer Group.

      (e)     In the event that you breach this Paragraph 4, you will repay the Separation Payment, without prejudice to Employer's right to seek any other remedy, including injunctive relief.

      (f)     You further represent to Employer that you have not engaged in the prohibited activity described above up to and including the date you sign this Agreement.

5.     Recovery of Expenses and Fees. If you should assert any claims that you have released under this agreement, you agree that the Employer (and any Releasee) shall be entitled to recover from you all costs, expenses and attorneys' fees it or they may reasonably incur in defending against those claims.

6.     Final Settlement of Claims and Employment. You understand and agree that any claims or disputes in any way related to your employment relationship and separation from the Employer are fully compromised, settled and released on the Effective Date.

7.     No Admission of Fault. You acknowledge and understand that nothing in this Agreement is an admission of fault or wrongdoing by the Employer or any Releasee.

8.     Voluntary Nature of Agreement. Both parties acknowledge that they have read this Agreement before executing it, understand its terms and have voluntarily chosen to enter into this Agreement. The parties also acknowledge that no promise or representation has been made by you to the Employer or by the Employer or Employer Group to you other than as set out in this Agreement.

9.     Confidentiality of this Agreement. You agree not to disclose the terms and provisions of this Agreement to anyone other than your immediate family, attorney or tax advisor. You further agree that

**EXHIBIT A**

- 7 -



because of the difficulty of enforcing this provision, and harm to the Employer, the Employer is entitled to injunctive relief against any breach.

10.    Future Assistance. You undertake to cooperate and make yourself reasonably available to employer Group in the event your assistance is reasonably required to locate, understand, or clarify work previously performed by you or other work-related issues relating to your employment. You further agree, promptly after you receive the Employer's reasonable request, to cooperate, assist and make yourself reasonably available to the Employer Group or its attorneys, on an as-needed basis, to provide information related to any current lawsuits which are pending or which may arise in the future, related in any way to issues of which you had personal knowledge or involvement during your employment with the Employer. The Employer will reimburse any reasonable out-of-pocket expenses incurred as a result in your participation. Expenses must be preapproved before they are incurred (*e.g.* airfare, travel, meals, *etc.*).This may include, but is not limited to, providing information to the Employer attorneys, providing truthful and accurate sworn testimony in the form of deposition, affidavit and/or otherwise requested by the Employer, or providing testimony to government agencies. If you are contacted by a governmental agency or any attorneys not representing the Employer to provide information related to Employer, you undertake to first contact Randy Marko at the Employer Group prior to providing any information or response in order to provide the Employer Group with a meaningful opportunity to respond to such a request. You also agree to permit the Employer's attorneys to be present during any interview you may be required to give with any governmental entity or opposing attorney.

11.    Non-Disparagement. You agree that you will not make any legally impermissible statements or representations that disparage, demean, or impugn any Releasee, including, without limitation, any legally impermissible statements which are disparaging to the Releasees or their reputations, or which impugn the personal or professional character, competence, or reputation of any Releasee, nor will you encourage or assist others to make any such statements or representations. Nothing in this paragraph is intended to prohibit you from making a statement that is permitted or required by applicable law.

12.    Disputes. The parties agree that any dispute, controversy or claim arising out of or related to your employment with the Employer, this Agreement, including the validity of this arbitration clause, or any breach of this Agreement shall be submitted to and decided by binding arbitration in Detroit Michigan before one neutral arbitrator. A COPY OF THE RULES CAN BE FOUND AT www.adr.org. You understand and agree that this agreement to arbitrate includes any dispute or controversy arising out of or related to the payment of your wages or hours worked with the Employer or the reimbursement of your work-related expenses, including individual and collective wage and hour and expense-related actions. Arbitration shall be administered under the rules of the American Arbitration Association in accordance with its rules for employment arbitration and any requirements imposed by the state of your Employer's plant location. Each party shall pay its own costs of arbitration. Any arbitral award determination shall be final and binding upon the Parties and may be entered as a judgment in a court of competent jurisdiction. NO CLAIMS MAY BE ARBITRATED ON A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION BASIS, AND THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO SUBMIT, INITIATE, OR PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A PLAINTIFF, CLAIMANT OR MEMBER IN ANY CLASS ACTION, COLLECTIVE ACTION, OR OTHER REPRESENTATIVE OR JOINT ACTION. CLAIMS MUST BE ARBITRATED ON AN INDIVIDUAL BASIS. THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY.

**EXHIBIT A**

- 8 -



13.     Governing Law. This Agreement, for all purposes, shall be construed in accordance with the laws of the state of the Employer's plant location without regard to conflicts-of-law principles.

14.     Severability. In the event that any provision of this Agreement becomes or is declared by a court or other tribunal of competent jurisdiction or arbitrator to be illegal, unenforceable or void, the remainder of this Agreement shall continue in full force and effect without said provision or portion of provision.

15.     Captions. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

16.     Entire Agreement. This Agreement and its exhibits represent the entire agreement between the Employer and you concerning your employment with and separation from the Employer and supersedes any and all prior and contemporaneous understandings, discussions, agreements, representations and warranties, both written and oral, concerning such subject matter; provided, however, that nothing in this Agreement modifies, supersedes, voids, or otherwise alters any Confidentiality Agreement or Intellectual Property Assignment agreement which shall remain in full force and effect. You acknowledge that neither the Employer nor any representative of Employer has made any representation or promise to you other than as set forth in this Agreement. No other promises or agreements or modifications to this Agreement shall be binding unless agreed to in writing and signed by you and by the VP-Human Resources of the Employer Group.

17.     Counterparts. The parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile, email in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document has the same effect as delivery of an executed original of this Agreement.

18.     This Agreement is executable until June 20, 2020. This Agreement is null and void if the Employer has not received a copy of the Agreement executed by you on or before the Expiration Date.

Very truly yours,

Lisa Owens
HR Director

*(Signatures follow)*

**EXHIBIT A**

- 9 -

FLEX·N·GATE

Acknowledged and agreed to this

_____day of_____year_____

_____
EMPLOYEE NAME

Subscribed and sworn to before me this

_____day of_____year_____

_____
Witness

_____
Notary Public
My commission expires: _____

or

_____
Company Witness

**EXHIBIT A**

- 10 -



### EXHIBIT A
### VOLUNTARY WAIVER OF REVIEW
### AND CONSIDERATION PERIOD

I UNDERSTAND THAT Paragraph 2 of the attached Separation and Release of Claims Agreement specifically provides me with a 21-day time period within which to consider this Agreement. By signing this waiver, I knowingly and voluntarily choose to waive the 21-day time period, and understand that all other provisions of the Agreement continue to apply to me.

The decision to sign this waiver was completely voluntary and in so doing, I have not relied on any oral or written statements or promises made by the Employer or its representatives.

EMPLOYEE ACKNOWLEDGEMENT

Acknowledged and agreed to this

_____ day of _____ year _____

_____

    Michael Ranck

NOTARY

Subscribed and sworn to before me this

_____ day of _____ year_____

                              _____

                              Witness

_____    or

Notary Public

My commission expires: _____        _____

                              Employer Witness

**EXHIBIT A**